## CHARLESTON.

Smith *v.* United States Fidelity & Guaranty Co.

(No. 6691)

Submitted April 23, 1930.   Decided May 31, 1930.

*Hubard & Bacon,* for plaintiff in error.
*Love & Love* and *Osenton & Lee,* for defendant in error.

LITZ, JUDGE:

The defendant, United States Fidelity & Guaranty Company, is aggrieved by the judgment of the circuit court rendered upon a verdict for $11,285.80 against it in favor of the plaintiff, C. E. Smith, as administrator of the estate of Marvin Smith, deceased, in an action of assumpsit upon a liability insurance policy issued by the Fidelity & Guaranty Company to C. M. Montgomery as owner of a Wills-St. Clair roadster automobile, by reason of the wrongful death of the decedent resulting from the negligent operation of said automobile by Ira Abbott (an insolvent) with the permission of said Montgomery.

The tragedy occurred June 22, 1926, in Fayette county about three miles from the city of Montgomery where Abbott and Montgomery resided. By a previous action, plaintiff had recovered judgment for $10,000 against Montgomery and Abbott, which, on writ of error to this court, was affirmed as to Abbott, but reversed as to Montgomery. It was asserted in that action, as grounds of liability against Montgomery, (1) that Abbott was operating the car at the time of the injury as servant of Montgomery, and (2) that Montgomery had permitted Abbott to drive the car while intoxicated. The reversal in favor of Montgomery was predicated on the holding that the evidence did not justify the verdict on either ground. After the case was remanded and execution against Abbott had been returned unsatisfied, the plaintiff instituted this action.

The policy sued on insures Montgomery against loss and expense arising, or resulting from, claims upon him for damages, by reason of the ownership, maintenance, or use of said automobile, in consequence of accidents causing (a) death or bodily injury to others and (b) destruction or damage to property.

The policy also extends the same protection to any other person or persons while riding in or legally operating the automobile, and to any person, firm, or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the owner. It further provides that in case an execution on a judgment for damages against any one so protected is returned unsatisfied because of his insolvency or bankruptcy, an action may be maintained by the injured person or his or her personal representative against the insurance company "under the terms of the policy" for the amount of such judgment "not exceeding the amount of the policy." The policy also requires immediate written notice of accidents, with the fullest information obtainable at the time, to be sent the home office of the company or its "authorized representative." The insured is also required to give like notice of claim on account of any accident, and immediately to forward the company "every summons or other process as soon as same shall have been served on him."

The grounds of defense are: (1) That Abbott was using the car at the time of the injury without the permission of Montgomery, and (2) that the condition in the policy requiring immediate written notice of the accident was not complied with.

The evidence is, in our opinion, ample to establish the permission of Montgomery. The second question, however, is more difficult of solution. The plaintiff admits that written notice of the accident was not given, but contends that such notice has been waived by the insurance company, through its "authorized representative," N. R. Coles, who countersigned the policy. The defendant denies that the agent was authorized to waive notice, and asserts that notice could be waived only by compliance with the provisions of the policy, following:

"(1) No change or waiver of any of the terms, conditions or statements of this policy shall be valid unless set forth in an indorsement hereto and signed by the president, a vice-president, one of the secretaries of the company, or the superintendent of the automobile department.

"(2) Notice given to or the knowledge of any agent or other person whether received or acquired before or after the date of the policy, shall not be held to waive any of its terms, conditions or statements, nor preclude the company from asserting any defense under said terms, conditions or statements, unless set forth in a duly executed indorsement attached hereto."

The policy was countersigned, "Coles-Henderson Ins. Agency, N. R. Coles, Mgr., Authorized Representative." The contract of agency between the insurance company and Coles-Henderson Insurance Agency, whose place of business was in the city of Montgomery, required the agent, acting through its manager, N. R. Coles, to "carefully investigate the moral hazard and responsibility of all applicants for the company's bonds or policies; (to) exercise the greatest care in soliciting such risks as the agent may be empowered to solicit," and receive premiums due the company, and "assist in the investigation and settlement of claims upon the company's bonds or policies." It also issued and canceled policies. N. R. Coles, who lived at Montgomery, was manager of the insurance agency at the time the policy was issued and when the injury occurred. Coles having died before the first suit, Montgomery, as a witness for the plaintiff, testified, over the objection of defendant, that the day following, on his way to the office of Coles-Henderson Insurance Agency to report the accident, he met Coles in the city of Montgomery and advised him of the occurrence; that Coles informed him that he had already heard of the accident and that nothing further need be done until a claim was asserted; that he had previously reported to Coles an accident under the same policy, and naturally relied on his advice in the premises. Upon the institution of the first suit, which was the first notice to Montgomery of any claim, Montgomery presented the summons in the case to Coles' successor, Sewell Champe, who notified the Charleston Agency of defendant. The defendant immediately sent an investigator, and, upon receiving his report, denied liability on the ground that written notice of the accident had not been received by it until "on or about June 1, 1927."

"The power of insurance agents to bind their principals is to be determined by the power they are held out by the com-

panies to the public as possessing. * * * It is accordingly held that an insurance agent, furnished by his principal with blank applications and with policies, duly signed by the company's officers, and who has been authorized to take risks, to issue policies by simply signing his name, to collect premiums, and to cancel policies, without consulting his principal, is empowered to waive conditions of forfeiture in such policies and his knowledge is the knowledge of the insurer, notwithstanding any excess of his actual authority." 14 R. C. L. 1158.

"Where insured has been misled into thinking that nothing further would be required of him, and on that account has failed to take further steps which he might have taken to furnish proofs of loss, the company cannot take advantage of such failure, induced by its authorized agent acting for it, for the purpose of defeating liability under the policy. In other words, any conduct upon the part of authorized agents which leads the insured to believe that no further proofs are necessary precludes the insurer from relying on the absence thereof." Section 548, vol. 2, Couch, Cyc. of Insurance Law.

*Reilly* v. *Linden et al.,* 151 Minn. 1, 186 N. W. 121, involving facts almost identical with those in the present case, holds: "Immediate service of written notice of an accident, under an indemnity policy, may be waived by parol, though the policy contains a clause that no condition, provision, or agreement thereof shall be waived or altered except by written indorsement signed by certain designated officers. The clause of an indemnity policy providing that no officer, agent, or other representative of the company shall have power to waive any condition thereof, except such as may be indorsed thereon or added thereto, has no reference to those stipulations which are to be performed after a loss has occurred, such as giving notice of the accident."

It is ruled in *Lee* v. *Casualty Co. of America,* 90 Conn. 202, 96 A. 952, 954, that the provision of a policy of casualty insurance, requiring the insured to give immediate notice of a casualty and of the claims on account thereof, is intended to give the insurer an early opportunity to investigate the circumstances, and, being for the insurer's benefit, may be waived

by it. The opinion of the case states: "The provisions of the policy upon which the defendant relies were made for its own benefit, so that it might have immediate notice of any casualty insured against and an early opportunity to investigate the circumstances attending it. The purpose of the notice of an accident is the same in casualty insurance as the notice of a loss by fire in fire insurance and of the death of an insured in life insurance. Being for the benefit of the insurer, it may be waived by it in the one case as well as the others. It is well settled that the notice of loss by fire and death may be waived. The same principle is involved in the one case as in the others. There may be more reason why an insurer would insist upon the notice, and less likelihood that it would waive it in the case of a casualty than in the other cases. It is a stipulation upon which it may insist, but one which it may waive."

*O'Connor* v. *Maryland Motor Car Insurance Co.*, 287 Ill. 204, 122 N. E. 489, 3 A. L. R. 787, decides: "Where an automobile insured against theft had been stolen, an informal notice in writing to insurer's agent was sufficient, when considered so by the agent, although not accompanied by sworn statement, as required by the policy; insured having a right to rely on the agent's assurance that the proof was sufficient."

This court holds, in line with many other authorities, that the usual clause in an insurance policy prescribing certain formalities for waiver on the part of the insurer of covenants to be performed by the insured relates to provisions and conditions, the performance and fulfillment of which are essential to the validity of the contract and its continuance in force, and do not refer to stipulations to be performed after a loss has occurred; that notwithstanding such clause, the condition of the policy requiring notice and formal proof of loss by the insured may be waived by parol, by local agent empowered to issue policies, collect premiums, and make renewals and cancellations; and that such condition is waived by conduct of the insurer or its authorized agent reasonably inducing him, in good faith, to believe that notice or proof are not required. *Lusk* v. *American Central Insurance Co.*, 80 W. Va. 39, 91 S. E. 1078.

''The provision of the automobile liability insurance policy that the insured shall give immediate 'written notice' to the company may be waived, expressly by agreement, or impliedly, by conduct of the insurer.'' Section 832, Sunderlin on Automobile Insurance.

''Where the general agent of defendant indemnity insurance, who was notified orally of plaintiff's claim, made no objection, and fairly led plaintiff to believe that the giving of written notice was unnecessary, defendant is estopped to defend on the ground of lack of written notice.'' *Farmers' Handy Wagon v. Casualty Co. of America,* 184 Iowa, 773, 167 N. W. 204. The opinion (supplemented on rehearing 1918, 184 Iowa, 773, 169 N. W. 178), reads: ''The contract between the parties provides that the insured shall 'give immediate written notice, with full particulars, of any and all claims which shall be made on account of a casulty covered thereby.' No such notice was given, and failure to do so is made a defense. The appellant meets it by pleading that the requirement was waived. We think this claim is well made. The general agent was notified by word of mouth. He acted upon that notice, made no objection to the notice, and fairly led the other party to believe by his conduct that the giving of written notice as stipulated in the contract was unnecessary. The oral notice, being thus acted on, made the stipulated written notice an idle formality. In these circumstances it is so well settled that the defendant is estopped to defend with the lack of the written notice as that we will cite no authorities for the proposition that it is' estopped.''

The defendant insists that the testimony of Montgomery is improper under section 23, chapter 130, 1923 Code, providing that no party to any action, suit, or proceeding, nor any person interested in the event thereof, nor any person from, through, or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness to any personal transaction or communication between such witness and a person at the time of such examination, deceased, insane, or lunatic, against the executor, administrator, heir at law, next of kin, assignee,

legatee, devisee, or survivor of such person, or the assignee or committee of such insane person or lunatic. In holding that a party to a suit is competent to testify in his own behalf against the board of education in relation to a personal transaction between himself and a deceased member of such board, JUDGE WILLIAMS, speaking for the court *(Board of Education* v. *Harvey*, 70 W. Va. 480, 74 S. E. 507, 508), said in reference to such testimony: ''This testimony is not denied. But objection is made to it on the ground that, Dixon being dead, Mrs. Harvey is not a competent witness to prove the personal transaction between them. This objection is not well taken. Section 23, c. 130, Code 1906, removes the common-law disability upon parties to suits, and permits them to testify in their own behalf, except in relation to certain matters, when such matters are to be used as evidence against certain designated persons. But the testimony in this case does not fall within the exception. True Mrs. Harvey is a party to the suit, and her testimony relates to a personal transaction had with a person who was deceased at the time her testimony was given. But these circumstances alone do not disqualify her. There is still another qualification which must exist before her testimony would be rendered inadmissible, and that is that it must be against a person who stands in a certain designated relation to the deceased person with whom the personal transaction was had. If the testimony is not against such a person, it is clearly admissible under the broad enabling provision of the statute. Before Mrs. Harvey's testimony could be excluded, it would have to appear that it was evidence against 'the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor' of Steven Dixon. The board of education occupies none of these relations to one of its deceased members. Mrs. Harvey was therefore competent to testify concerning the oral agreement between herself and the deceased president of the board of education.''

In view of the general duties of the agent who issued and countersigned the policy as ''authorized representative'' of the defendant, and who was, under the terms of the policy, empowered to receive notice of the accident, it is our conclu-

sion that the requirement of written notice has been waived by the insurer. There is no attempt to show that the "Home Office" did not receive prompt information of the accident through the local agent or otherwise.

The judgment is affirmed.

*Affirmed.*