GEORGE M. RAGLAND, ANCILLARY ADMINISTRATOR OF ESTATE OF JAMES J. HARDIMAN, *Deceased*

*v.*

NATIONWIDE MUTUAL INS. CO., SUCCESSOR BY CHANGE OF NAME OF FARM BUREAU MUTUAL AUTOMOBILE INS. CO., *A Corp.*

(No. 12026)

Submitted September 21, 1960. Decided June 13, 1961.

*Jackson, Kelly, Holt & O'Farrell, David D. Johnson,* for plaintiff in error.

*Koontz & Koontz, Harry B. Lambert,* for defendant in error.

BROWNING, JUDGE:

James J. Hardiman was killed on May 8, 1956, in White Sulphur Springs, when he was struck by an automobile owned and operated by George H. Brown. At the time of the accident there was in effect an accident insurance policy, issued by the Nationwide Mutual Insurance Company, etc., hereinafter referred to as defendant, insuring the said George H. Brown against bodily injury liability in the amount of $10,000.00, which policy of insurance provided in part:

> "The Policy holder or other person entitled to protection or someone on his behalf shall:
>
> "(1) give the Company or its agent written notice of all accidents, occurrences and losses as soon as practicable;
>
> "* * *.
>
> "No action shall lie against the Company under any of the coverages until after full compliance with all the terms of this policy, * * *."

Brown fled the scene of the accident, but was apprehended the following day at his home in Lewisburg and charged with "(1) negligent homicide (2) Hit and Run." He retained the services of Mr. John A. Lile to represent him in the criminal prosecutions, who promptly made a full investigation of the accident. Mr. Lile was the regular attorney for the defendant and maintained his office in Lewisburg where the defendant also maintained a district claims office.

On May 17, 1956, there appeared in the Greenbrier Independent, a newspaper of general circulation in Greenbrier County, West Virginia, a news story to the effect that George Henry Brown of Lewisburg had been held to the grand jury on charges arising out of the traffic fatality of James Hardiman.

Paul Scott of Ronceverte, the duly authorized agent of the defendant, had written the policy for George H. Brown in March, 1955. Sometime after the accident, Mrs. Scott, in casual conversation with a Negro employee, discussed the accident and subsequently mentioned the incident to her husband stating that it involved a man named George Brown.

On September 27, 1956, counsel for the widow of James J. Hardiman, directed a letter to George H. Brown in care of Paul Scott at Ronceverte presenting a claim for damages on account of the death of James J. Hardiman. This was the first "notice" that the defendant or any of its agents or representatives received that the George H. Brown, involved in the accident of May 8, was a policyholder. Mr. Scott ascertained the whereabouts of George H. Brown to be in Sutton, Braxton County, West Virginia, and left a message with Brown's mother in Lewisburg that he desired to see him about the accident mentioned in the above letter. Pursuant to this message, Brown, by letter dated November 3, 1956, notified Mr. Scott that he would see him that weekend and "I had insurance when I had the wreck with you." On November 10, 1956, Brown went to the office of Mr. Scott and made a full oral report of the accident. As a result of this conference a "non-waiver" agreement was executed on November 12, 1956, and defendant thereafter investigated the accident, and, on December 12, 1956, notified Brown that it denied liability under the policy for the reason that he had failed to give notice of the accident "as soon as practicable."

White Sulphur Springs, Lewisburg and Ronceverte are all incorporated towns in Greenbrier County, situate within a ten-mile radius of each other.

George M. Ragland, Ancillary Administrator of the estate of James J. Hardiman, hereinafter referred to as plaintiff, instituted an action for damages for wrongful death against George H. Brown in the Circuit Court of Greenbrier County on April 2, 1957. The

action came on for trial on August 2, 1957, and, upon the nonappearance of Brown, a jury was empaneled upon an inquiry of damages. The jury returned a verdict in favor of the plaintiff in the amount of $13,000.00, and judgment was entered thereon. An execution was issued upon such judgment, which execution was returned October 8, 1958, with the notation "no personal property found with which to make the within execution." Plaintiff subsequently instituted a motion for judgment proceeding in the Circuit Court of Kanawha County upon the insurance policy and the judgment obtained in Greenbrier County, to which the defendant filed a counter-affidavit, and a Specification of Defense setting out the above quoted provisions of the policy. The facts hereinabove set forth were stipulated by the parties and the case was submitted to the Court for decision. On December 4, 1959, the Circuit Court of Kanawha County entered judgment for the plaintiff in the amount of $10,000.00, the limit of defendant's liability under the insurance policy, to which judgment this Court granted a writ of error and supersedeas on March 8, 1960.

The trial court in an opinion which was made a part of the record stated its reasons for so holding. It found that the pertinent language of the contract between the parties as stated in the liability insurance policy constituted a condition subsequent, and that the insurance company suffered no actual prejudice by the failure of the insured to give written notice of the fatal accident for approximately six months after it occurred since "it had sufficient notice and an ample opportunity to have investigated and defended the litigation." The decisions of several courts of last resort of other jurisdictions are cited in support of that holding.

The courts of this country are in hopeless conflict upon the issue presented to this Court upon this writ. The confusion is such that more than one court seems to have taken contradictory views upon this question within a relatively short period of time with both lines

of decisions remaining unreversed and undistinguished. To further illustrate the apparent intricacy of the problem, counsel for both the plaintiff and the defendant, in briefs and argument, confidently assert that this Court has by its previous decisions decided the question generally, but each contends that the issue was determined in his favor. There are some aspects of this question about which there seems to be almost unanimous agreement. It seems to be well settled that a provision in a liability policy expressly making the insured's failure to give timely notice a ground of forfeiture, or specifically stating that compliance therewith is a "condition precedent" to recovery, and actually uses those vital words, no recovery can be had where timely notice is not given. 18 A.L.R. 2d. 452.

The trial court in its written opinion stated that if the provision in this policy is "deemed a condition precedent, then there can be no question but that the plaintiff should be denied recovery in this case." The decisions appear to be uniform also in holding that the purpose of such a provision in a liability policy is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the event which resulted in a claim being made against the insurer. It was so held in *Charleston Laundry Co. v. Ohio Farmers Indemnity Co.,* 89 F. Supp. 649, aff'd., 183 F. 2d. 682, a case in which the Federal Court applied the West Virginia law. It is in cases where the vital terms "condition precedent", or "forfeiture", are not contained in the insurance contract, but in which there are express clauses, such as in the policy here under consideration that the insurer will not be liable unless there is full compliance with all of the terms of the policy, and one of those terms is similar to or identical with the first mentioned group of cases, that the conflict manifests itself. Here again counsel for the parties in this case are in disagreement, one contending that there are seventeen decisions supporting his view and a smaller

number to the opposite effect, while the other attorney makes the opposite contention. No criticism is meant by this statement for the writer of this opinion found that the Court was faced with a real dilemma.

In *Ross v. Mayflower Drug Stores* (1940) 338 Pa. 211, 12 Atl. 2d. 569, it was held that where a provision of the policy required the giving of prompt notice of the accident the duty devolving upon the insured constituted a condition precedent and its breach released the insurer from liability regardless of prejudice. But in *Frank v. Nash* (1950) 166 Pa. Super. 476, 71 Atl. 2d. 835, it was held that such a failure to comply with the terms of the policy in regard to the prompt forwarding of suit papers would not relieve the insurer of his liability in the absence of prejudice and that the burden was upon the insurer to show that he had thereby been prejudiced. In the opinion in the latter case it was stated that whatever might be the law in other jurisdictions upon this issue it was no longer open to question in that state.

The cases representing the conflicting views, as well as such cases may be segregated, are found under these headings: View That Breach Bars Recovery, at Page 454, and View That Breach Does Not Bar Recovery, at Page 455, of 18 A.L.R. 2d. The lead case of the Annotation on this subject in 18 A.L.R. 2d. 431 is *State Farm Mutual Automobile Insurance Co. v. Cassinelli* (Nevada) 216 P. 2d. 606. In that case the giving of reasonable notice of an accident was specifically made a condition precedent to liability and the words were used in the policy. Following the great weight of authority, the court held that, since the provision as to notice was not complied with, the insurer was not liable and the question of lack of prejudice was immaterial. The opinion contains a statement by way of dictum indicating that if the magic words were not contained in the contract of insurance, the language of which the court was construing, that its decision might be otherwise. However, this reservation upon that statement was cautiously added: ''* * *

especially if it were coupled with the rule adopted in some jurisdictions that prejudice would be presumed and that the burden of proof be upon the insured to overcome such presumption by a proper showing.''

It seems clear from studying the opinions of a multitude of cases dealing with this question that the particular language used in the policy as to the time in which notice must be given is not controlling and perhaps it could be said that it makes little difference. These terms are found in different policies that have been construed: ''immediate'', ''prompt'', ''forthwith'' and ''as soon as practicable'', the language used in the policy in this case, and other language of similar import. Regardless of the language used, the courts are generally in agreement that if reasonable notice is given that is sufficient. The question of whether notice was given without unreasonable delay, and whether such question is for court or jury determination, has produced another multitude of decisions which are by no means uniform in their holdings. Many are collected and cited in 18 A.L.R. 2d. at Page 504.

It seems clear by the great weight of authority that the delay by the insured from May 8, 1956 to November 3, 1956, in giving notice of the fatal accident was not timely, and the insurer will be relieved of liability by the insured's violation of this condition of the policy, unless the rule be applied that prejudice must be shown to relieve the insurer under such circumstances. In the annotation in 18 A.L.R. 2d. ''Liability Insurance-Notice-Papers'', to which reference has heretofore been made, Page 467 begins the citation of cases in which these periods were held an unreasonable delay in giving notice of an accident: June 23 to July 21; 28 days; 46 days; 66 days; 2½ months; 29 days; 6 weeks; 15 weeks; 4½ months; et cetera. Other cases follow beginning on Page 469 in which 2 days, 10 days, 22 days and 25 days were held not to be unreasonable in which the insured could give the insurer notice after an accident covered by an automobile liability

policy. On Page 452 of 18 A.L.R. 2d., decisions from ten jurisdictions are cited which are in accord with the *Cassinelli* case that, if the policy expressly makes the insured's failure to give timely notice a ground of forfeiture or compliance a condition precedent to liability, no recovery can be had where timely notice has not been given. On Page 454 is this statement by the editor: "However, there seems to be little doubt that the modern trend is toward considering the policy requirement as to giving notice and forwarding of suit papers a condition precedent even if the policy does not contain an express statement to this effect, and to deny recovery under the policy in the case of noncompliance with such requirement." The decisions of fifteen courts of last resort are cited thereafter in support of that statement. Beginning on Page 455 of 18 A.L.R. 2d., are cited decisions from five states (including three of the same states for which cases in the above group were cited) in which it was held that, in the absence of an express provision as to forfeiture or a clause that the giving of notice was a condition precedent to recovery, the insured's delay in giving notice was not necessarily held to be fatal. The cases cited in 18 A.L.R. 2d. are, of course, only the later decisions and reference is also made to 76 A.L.R. 182, 201 and 205; 123 A.L.R. 981 and 984. Under the three groupings of cases heretofore mentioned, it is significant that no decision of this Court is found.

It is with some trepidation that we turn to a review of the decisions of this Court that are pertinent in an effort to find a precedent, if any there be, to guide us in a determination of the difficult question that is presented upon this writ of error.

In *Peninsular Land Transp. & Mfg. Co. v. Franklin Insurance Co.*, 35 W. Va. 666, 14 S. E. 237, plaintiff sought recovery under a fire insurance policy for damage to a building by fire. The policy provided that notice of loss should be given "forthwith" and notice thereof was given fifteen days thereafter.

Proofs of loss were to be furnished within thirty days, but were not furnished until seventy-eight days after the expiration of that period. The judgment for the plaintiff was reversed and special emphasis was placed upon the subject of special findings, as will be observed by noting the first seven syllabus points, but some statements are contained in the opinion that must be considered, and the 9th Syllabus Point reads: "The usual stipulations that the insured shall furnish certain preliminary proofs of loss, when loss has been sustained, are conditions precedent to the insurer's right to recover; but such conditions may be waived, or the insurer be estopped from setting them up." (Italics supplied.) As to notice of loss by fire, the Court said: " In this case we are not called on to consider the effect of these as to notice of loss, for on turning to the policy we find the ninth requirement reads, 'Persons sustaining loss or damage by fire shall forthwith give notice of said loss to the secretary of the company;' but I nowhere see that this shall be done on pain of forfeiture; and, 'if a policy does not expressly make such failure a cause of forfeiture, it will not be so held.' ", citing authority. Then as to the filing of proofs of loss is this statement, quoted with approval from May on Insurance, (Vol. 2, § 465): "No doubt the usual stipulation that the insured shall furnish certain preliminary proofs of loss, when loss has been sustained, are conditions precedent, without compliance with which no recovery for loss can be had. But, in conformity to the general rule applicable to conditions precedent, a failure to comply with which works a forfeiture, they will be construed strictly against the insurers, for whose benefits they are imposed, and liberally in favor of the insured, upon whom they impose burdens more or less onerous." And further: "And the same doctrine, and for the same reason, is applied to the question of proof of loss, or the rendering of a particular account of loss, as it is termed in this policy. Still the main principles of interpretation applied to contracts in general are applied to contracts of insurance, not-

withstanding that, owing to the exceptional nature of the subject-matter and the peculiar relation of the parties and the public concernment, certain parts are sometimes held void as against public policy; * * *.''

The 2nd. Syllabus Point of *Rheims v. Standard Fire Insurance Company,* 39 W. Va. 672, 20 S. E. 670, states the holding upon the controlling issues in that case: ''Provisions in a policy of insurance prescribing a limit of time, within which notice of loss is to be given, will not be construed as causes of forfeiture, where not so expressly stipulated in the policy; and where it is provided that no suit or action against the company for the recovery of any claim by virtue of the policy shall be sustainable until after full compliance by the assured with all the foregoing requirements, nor unless suit or action be commenced within six months after the date of the fire, proofs of loss may be furnished in a reasonable time after the fire, and, if accepted and retained by the insurer without objection, all objection to the form of the proofs and the time, in which they are presented, will be considered as waived.''

*Flanaghan v. Phenix Insurance Co.,* 42 W. Va. 426, 26 S. E. 513, is also an action upon a fire insurance policy. The Court held: ''The burden of proving compliance with the necessary requirements of an insurance policy as to proofs of loss, or the waiver of such compliance on the part of the company, is on the insured; and, if he fails to establish the same by a preponderance of evidence, his action must fail.''

In *Adkins v. Globe Fire Insurance Company,* 45 W. Va. 384, 32 S. E. 194, the plaintiffs were issued a policy of fire insurance on their liquor saloon on July 1, 1897, and two days later it burned. An action of assumpsit was instituted on the policy on September 2, 1897. This statement from Judge Brannon's opinion indicates the holding upon the issue of interest in the present case: ''The policy provides that the insured shall make and furnish certain proof of loss within sixty days after the fire, and the loss shall not be

payable till sixty days after such proof of loss shall be furnished. This Court held, in *Peninsula Land Trans. & Mfg. Co. v. Franklin Fire Ins. Company,* 35 W. Va. 666, (14 S. E. 237), that the furnishing such proof was a condition precedent to recovery on the policy; and *Flanaghan v. Insurance Co.,* 42 W. Va. 426, (26 S. E. 513) holds that the burden of showing that such proof of loss was furnished is on the plaintiff. It is highly improbable that such proof was furnished so as to warrant suit on September 2, according to plaintiff's own evidence. It is not shown when proof of loss was furnished. Indeed, there is nothing but hearsay to show any was ever furnished; * * *."

Judge Brannon also wrote the opinion in the case of *Munson v. German-American Fire Insurance Company,* 55 W. Va. 423, 47 S. E. 160. That was an action upon a fire insurance policy, the fire occurring on October 20, 1901, and the earliest notice to the company being given on January 3, 1902. After reviewing the previous decisions of this Court on this question, Judge Brannon said in the opinion: "All the cases are consistent with two propositions: One, that where proof is required by the policy within a fixed time, but no forfeiture is declared, mere failure to furnish proof within the time does not destroy all right of recovery; the other, that such proof must precede action."

The defense to plaintiff's action upon a fire insurance policy in *Tucker v. Colonial Fire Insurance Company,* 58 W. Va. 30, 51 S. E. 86, was the alleged violation of the "iron safe clause" contained in the policy. In affirming a verdict for the plaintiff this Court said: "The clause of the policy under consideration, constituted a promissory warranty on the part of the plaintiff, and a reasonable and substantial compliance therewith, in good faith, is shown by the practically uncontradicted and uncontroverted evidence in this record." The 7th Syllabus Point of that case reads: "In the absence of bad faith, the law requires of the insured only a reasonable and substantial com-

pliance with the clauses, conditions and warranties of a policy of fire insurance.''

In *Morris v. Dutchess Insurance Company*, 67 W. Va. 368, 68 S. E. 22, it was held that the furnishing of preliminary proofs of loss as required by an insurance policy ''is a condition precedent to any right of action thereon, and unless waived an action on the policy does not accrue to the insured until such proofs have been furnished.''

Again it was held in *Raleigh Hardware Company v. Williams*, 106 W. Va. 85, 144 S. E. 879, after reviewing the decisions in previous cases, that: ''These cases go no further in this phase than to hold that the filing of proofs of loss is a condition precedent *to action on the policy.*'' (Italics supplied). The Court said further: ''For breach of certain warranties contained in fire insurance policies, they may be, and frequently are, by the very terms thereof, declared to be void. In the policies in the cases at bar such conditions are found, but not so as to proofs of loss within sixty days.''

In *Smith v. United States Fidelity and Guaranty Co.*, 109 W. Va. 280, 153 S. E. 584, the company denied liability to its insured upon the ground that proper notice had not been given as provided in the policy. It was admitted that no written notice of the accident was ever given, but plaintiff contended that notice had been waived by the company through its ''authorized representative''. This person was an agent for the company and not a person authorized by the policy to waive notice, those officials being limited to the president, a vice-president, one of the secretaries of the company, or the superintendent of the automobile department. However, this Court held that the provision as to notice had been waived by giving oral information of the accident to the agent. In the opinion it was said: ''This Court holds, in line with many other authorities, that the usual clause in an insurance policy prescribing certain formalities for waiver on

the part of the insurer of covenants to be performed by the insured relates to provisions and conditions, the performance and fulfillment of which are essential to the validity of the contract and its continuance in force, and do not refer to stipulations to be performed after a loss has occurred; that notwithstanding such clause, the condition of the policy requiring notice and formal proof of loss by the insured may be waived by parol, by local agent empowered to issue policies, collect premiums, and make renewals and cancellations; and that such condition is waived by conduct of the insurer or its authorized agent reasonably inducing him, in good faith, to believe that notice or proof are not required. *Lusk v. American Central Insurance Co.*, 80 W. Va. 39, 91 S. E. 1078.''

In *Iannarelli, Committee v. Kansas City Life Insurance Company*, 114 W. Va. 88, 171 S. E. 748, plaintiff as committee for the insured, sought a declaration of the insured's rights under a life insurance policy. Insured had secured the policy July 11, 1927, and had paid the premium for one year in advance. The policy contained a ''total disability'' clause providing that, if the insured became totally and permanently disabled, the company, upon due proof, would waive payment of subsequent premiums on the policy during the continuance of such disability. Insured became insane a few months after securing the policy and was in that condition on August 11, 1928, when the period of grace expired; the plaintiff did not learn of the existence of the policy until four days after the period of grace had expired; and there was no proof of total disability submitted by the plaintiff within that period. The Court noted in the opinion that there were two lines of decisions in this country, one holding that giving of notice to an insurance company by an insured, or someone for him, of the disability of the insured under such a contract was a condition subsequent, and the other holding that it was a condition precedent. The Court, in holding that the giving of notice was a condition precedent and must be done

within the period of grace of the policy, distinguished the case from those arising from accident insurance contracts wherein it was stated that the giving of notice of disability is a condition subsequent. The principles enunciated in the *Iannarelli* case were followed in *DaCorte v. New York Life Insurance Company*, 114 W. Va. 172, 171 S. E. 248. The *Iannarelli* and *DaCorte* cases were decided at the same term of this Court. Also, at that same term of Court, the case of *Hayes v. Prudential Insurance Company of America*, 114 W. Va. 323, 171 S. E. 824, was decided, an action based upon the disability clause of a life insurance policy. The policy was issued February 3, 1926, the insured became disabled July 28, 1927, and claim for benefits under the disability clause was submitted in January, 1932. A judgment for the plaintiff upon the verdict of a jury was reversed by this Court upon a finding that it was reversible error to give Plaintiff's Instruction No. 1. That instruction told the jury that if it found for the plaintiff it could consider, in arriving at its verdict, "any premiums he may have paid, if any, since the defendant had notice of said disability, and disability benefits at the rate of $50.00 per month from the date of his disability to the time of the institution of this action and assess his damages accordingly. * * *" The 2nd Syllabus Point reads: "Where a disability clause of a life insurance policy provides that 'the first monthly payment shall be made immediately upon receipt by the company of due proof of such disability,' the furnishing of such proof is a *condition precedent* to the company's *liability to pay* disability benefits, and the insured may not recover monthly payments prior to the time of furnishing such proof." (Italics supplied.)

*Greenbrier Laundry Company v. Fidelity Casualty Company of New York*, 116 W. Va. 88, 178 S. E. 631, was an action of debt on a bond indemnifying an employer against loss of money or personal property due to the fraud, dishonesty, et cetera, of an employee. The bond had this provision: "Upon the discovery

by the employer of any dishonest act on the part of an employee, the employer shall at the earliest practical moment, and at all events not later than five days after such discovery, give written notice thereof addressed to the surety at its home office." Judgment for the plaintiff was reversed, inasmuch as the plaintiff had failed to meet the requirement regarding notice. The Court said: "It was the duty of the plaintiff to notify the defendant of such default at the earliest possible moment and in all events not later than five days after the first invoices became due. Failure in this respect defeats its right to recover."

In *Neill v. Fidelity Mutual Life Insurance Company*, 119 W. Va. 694, 195 S. E. 860, plaintiff instituted an action of assumpsit on the double indemnity provision of an accident clause of a life insurance policy. On January 15, 1932, the insured was seriously injured in an automobile accident. The policy provided that proof of claim under this provision of the policy must be filed with the company within sixty days after injury. The plaintiff did not file such information until April 22, 1932. The judgment for the plaintiff was affirmed, the Court stated in the opinion: "Here, the policy provides against a contingency which, in all probability, would render the insured, as it actually did in the instant case, unable to file a proof of claim until at least sometime after his injuries. Under the circumstances, we think the requirement of the filing of the proof of claim within sixty days, unlike the provisions in the *Iannarelli* and *DaCorte* cases, is a *condition subsequent.*" (Italics supplied.) In distinguishing the *Neill* case from the *Iannarelli* and *DaCorte* cases, the Court in the opinion further said: "The instant case involves an accident insurance contract. Clearly, in the total disability clause of a life insurance policy, the filing of a proof of claim is a condition precedent. Equally it is clear that an accident policy contemplates a disability which has already occurred and which, in many cases, would pre-

vent the assured from filing a proof of claim within any limited time." In the dissenting opinion, Judge Hatcher said: "I see not why the majority opinion classifies one condition precedent, the other subsequent."

In *Jenkins v. New York Life Insurance Company,* 122 W. Va. 73, 7 S. E. 2d. 343, the Court said: "The only question involved in this proceeding is whether a notice of disability which the company received April 14, 1933, operated retroactively so that the insured was entitled to the monthly payment of disability insurance provided for in the policy from the inception of his total disability, which the notice alleges began June 21, 1929." The deceased, the insured, was mentally incapacitated from June, 1929, until his death in 1934. The company waived premiums and made the monthly payments as provided in the policy beginning April 14, 1933, when notice and proof of disability were received. The 2nd Syllabus Point in the case of *Neill v. Fidelity Mutual Life Insurance Company,* 119 W. Va. 694, 195 S. E. 860, was distinguished from the 2nd Point of the Syllbus of *Hayes v. Insurance Company,* 114 W. Va. 323, 171 S. E. 824. In the opinion the Court said: "The Neill case was one where the policy being in force, liability thereon accrued at the date of the accident, subject only to the condition subsequent that proof thereof be filed within a stipulated period; while the case before us is one where liability, under the contract, did not accrue until the filing of proof of disability, a condition precedent. We wish to direct attention to the confused use of the terms 'condition precedent' and 'condition subsequent' in the decided cases and to the apparent confusion existing in cases involving the construction of life and accident insurance policies. * * * (Amen! Only the writer of this opinion is responsible for this exclamatory word.)

"* * *.

"We do not believe that we are here confronted with the question of the enforcibility of a vested right, but we are entirely concerned with the question of a condi-

tion required by the contract's terms to be performed prior to the vesting of that right.''

In *Roberts v. Indemnity Insurance Company of North America,* 114 W. Va. 252, 171 S. E. 533; and *Marcum v. State Automobile Mutual Insurance Company,* 134 W. Va. 144, 59 S. E. 2d. 433, this Court had occasion to interpret the ''cooperation clauses'' in those automobile liability policies, and, upon the facts in the former case, held that the insured had violated the clause, and in the latter case held as a matter of law that there was no violation. In this case there is no contention of a violation of the cooperation clause after the insurer became aware of the accident.

No attempt has been made to cite or discuss all of the cases that might be pertinent upon this question that have been decided by this Court. It is apparent that in the opinions of this Court, the terms ''condition precedent'' and ''condition subsequent'' have been used as they have in the opinions of courts of other jurisdictions, where the issue before this Court in this case was considered, in other than the purely legal and accepted definition of those terms. It is obvious that a condition in a fire insurance policy that proofs of loss be submitted within a designated time, where the loss is reported by the insured and there is a failure to submit proof of loss within such time, has an entirely different significance from the failure of an insured under an automobile liability policy to report a fatal accident until more than five months have elapsed after the accident. As was held in *Charleston Laundry Company v. Ohio Farmers Indemnity Co.,* 89 F. Sup. 649, Aff'd. 183 F. 2d 682, a case in which the federal court applied the West Virginia law, as heretofore stated, the decisions seem uniform that the purpose of such a provision in an automobile liability policy is to give the insurer an opportunity to make a timely and adequate investigation of all of the circumstances surrounding the event, and if it chooses to do so to settle the claim or defend the action against the insured in a court of law. It is apparent from the decisions of courts of other

jurisdictions and by the great weight of authority that: (1) The phrase "as soon as practicable" means a reasonable time; and (2) more than five months is not, under normal circumstances, a reasonable time for an insured to report a fatal accident to his insurer.

In *Black & White Cab Company v. New York Indemnity Co.*, 108 W. Va. 93, 150 S. E. 521, one of the provisions of the "indemnity" policy required the assured to "give prompt written notice" of all accidents involving bodily injury, or death, or damage to property of others. The assured had such an accident and did not report it for approximately a year thereafter. The Indemnity Company denied liability, the Cab Company settled an action against it and instituted an action against the Indemnity Company for reimbursement. The judgment for the plaintiff was set aside by this Court upon the ground that the assured had violated the condition of the policy relating to notice. The Court said: "Clause D, as hereinbefore quoted, provides that the assured shall give prompt written notice in case of accident. No definite time being provided for such report, the same must be made within a reasonable time, having regard to all of the circumstances. A delay of three months has been held to be unreasonable." It will be observed that in the opinion of that case there is no reference to a "condition precedent", a "condition subsequent", "prejudice" or the absence of it. The decision of this Court in that case has never been reversed or criticized in any subsequent case. On the contrary, it was cited with approval in *United States Fidelity & Guaranty Company v. Pocahontas Transportation Company*, 119 W. Va. 344, 193 S. E. 804. The *Black & White Cab Company* decision and the views expressed in the opinion are in accord with the weight of authority upon this issue, and particularly the "modern trend" as evidenced by the recent decisions of courts of other jurisdictions.

The judgment of the Circuit Court of Kanawha County is reversed and the case is remanded to that court for such further proceedings as may be indicated.

*Reversed and remanded.*