The **BUCKEYE UNION CASUALTY COMPANY, an Ohio Corporation,** Plaintiff,

v.

**John PERRY, Jerry Lee Nickoson, Charles S. Nickoson, Dallas Marcum and Leon Marcum, Defendants.**

Civ. A. No. 3363.

United States District Court
S. D. West Virginia,
Charleston Division.

March 6, 1968.

George S. Sharp, Kay, Casto & Chaney, Charleston, W. Va., for plaintiff.

Robert L. Baughan, Simpson & Baughan, Rudolph L. DiTrapano, DiTrapano, Mitchell & Maroney, Charleston, W. Va., for defendants.

## MEMORANDUM OPINION

FIELD, District Judge.

In this action the plaintiff seeks a declaratory judgment that it has no obligation under an automobile policy issued by it to the defendant, John Perry, to defend Perry in two certain suits instituted against him in the Court of Common Pleas of Kanawha County, West

Virginia, by Jerry Lee Nickoson, an infant, and Dallas Marcum, an infant, nor to pay any sum or sums which Perry might become legally obligated to pay as damages to said infants. Answers have been filed on behalf of all defendants, and plaintiff has moved for summary judgment upon the pleadings, certain exhibits and affidavits. There is no genuine issue as to any material facts and they are found to be as follows:

Under date of August 19, 1962, plaintiff issued to John Perry, as its named insured, an Automobile Policy No. FF–178684, providing coverage for a period of one year for bodily injury and property damage liability, the owned automobile being designated therein as a 1959 Ford 2-door sedan. The policy contained a standard provision covering the named insured with respect to a non-owned automobile, and certain other provisions relevant to this controversy which will be hereinafter set forth.

The insured, Perry, was regularly employed as a loader operator for Cannelton Coal Company. Sometime in August, 1963, Perry offered one Elbert Hicks half of some cinder blocks if Hicks would haul the blocks to Perry's home. Hicks owned a 1950 Ford truck, but declined the offer, stating that he was too busy. Thereafter one John Campbell agreed to haul the blocks under a similar arrangement, using Hicks' truck which he borrowed for that purpose. On August 12, 1963, while engaged in this project, Campbell wrecked the truck and injured both Jerry Lee Nickoson and Dallas Marcum who were riding with him at the time. The two actions on behalf of the infants were instituted on April 1, 1964, alleging that Campbell was the agent of Perry at the time of the accident.

Although Perry was aware of the accident, he gave no notice thereof to the plaintiff until June 12, 1964, some ten months later. On that date Perry's counsel wrote to Buckeye inquiring whether there was policy coverage on the actions instituted by Marcum and Nickoson. On July 10, 1964, a claims representative of plaintiff responded by letter to this inquiry advising there was no coverage by reason of the exclusion provisions of the policy relative to coverage on non-owned automobiles. This letter was something less than definitive in its nature for apparently at that time the representative was uncertain whether Perry was, in fact, an insured of Buckeye.

Thereafter it appears that counsel for Buckeye submitted the policy to the attorney for the injured infants for his examination as to coverage. On October 25, 1965, counsel for Buckeye attended a pre-trial conference of the Common Pleas actions and noted at that time that this declaratory judgment action on coverage would be instituted. On the following day counsel for Buckeye wrote the insured, Perry, as follows:

"Please be advised that I represent The Buckeye Union Casualty Company with whom you carried a policy of public liability and property damage insurance on your automobile. Your insurance company is undertaking the investigation and the defense of the two suits brought against you by the above claimants and will cooperate in every way with your personal attorney, Mr. Robert Baughan. The purpose of this letter is to advise you, however, that the action of Buckeye Union Casualty Company in the defense of these suits is under no circumstances to be construed as a waiver of their rights to refuse or deny payment under the policy at some later date, and they are hereby reserving all rights under the policy to deny coverage."

A copy of this letter was sent to Perry's personal attorney.

On these facts Buckeye contends it is entitled to summary judgment for two reasons: (1) the policy afforded no coverage on the non-owned Ford truck which was involved in the accident, and (2) Perry violated a condition precedent of the policy by failing to notify Buckeye of the accident until approximately ten months thereafter.

## I.

The following exclusion is stated in the policy:

"Exclusions. This policy does not apply under Part I:

\*　　\*　　\*　　\*　　\*　　\*

(h) to a non-owned automobile while used (1) in the automobile business by the insured or (2) in any other business or occupation of the insured except a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith or with an owned automobile;"

Plaintiff contends that this excluded coverage on the non-owned truck since it was being used in the business of the insured. This exclusionary language might appear to place any truck, as such, outside the scope of policy coverage, but this restrictive concept of the term "automobile" was rejected in the case of Seaford v. Nationwide Mutual Ins. Co., 253 N.C. 719, 117 S.E.2d 733, 85 A.L.R.2d 496, cited by plaintiff on the "business" aspect of the exclusion clause, and while *Seaford* held that a single trip by the insured in a tractor-trailer constituted a "business" use under the policy language, an opposite conclusion was reached by the Supreme Court of South Carolina in Glisson v. State Farm Mutual Automobile Ins. Co. (1965), 246 S.C. 76, 142 S.E.2d 447. While there is no West Virginia law on this point, it occurs to me that the quasi-personal arrangement in the present case between Perry and Campbell would not constitute a use of the vehicle in the "business or occupation" of the insured.

## II.

The policy here in question contained, inter alia, the following "conditions":

"3. Notice. In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. In the event of theft the insured shall also promptly notify the police. If claim is made or suit is brought against the insured, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

\*　　\*　　\*　　\*　　\*　　\*

"6. Action Against Company—Part I. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

The question of delayed notice under similar policy language was carefully considered by our Supreme Court in Ragland v. Nationwide Mutual Ins. Co. (1961) 146 W.Va. 403, 120 S.E.2d 482, and in holding that notice should be given the insurer within a reasonable time, the Court made the following observation:

"As was held in Charleston Laundry Co. v. Ohio Farmers Indemnity Co., D.C., 89 F.Supp. 649, affirmed 4 Cir., 183 F.2d 682, a case in which the federal court applied the West Virginia law, as heretofore stated, the decisions seem uniform that the purpose of such a provision in an automobile liability policy is to give the insurer an opportunity to make a timely and adequate investigation of all of the circumstances surrounding the event, and if it chooses to do so to settle the claim or defend the action against the insured in a court of law. It is apparent from the decisions of courts of other jurisdictions and by the great weight of authority that: (1) The phrase 'as soon as practicable' means a reasonable time; and (2) more than

five months is not, under normal circumstances, a reasonable time for an insured to report a fatal accident to his insurer."

 It is clear that under the *Ragland* decision, the delay of ten months in the present case was unreasonable in its nature, and precludes coverage under the policy. The fact that the failure to give notice was due to Perry's mistaken assumption that he had no legal involvement incident to the occurrence does not avoid the impact of Ragland on the facts here presented.

 Defendants contend, however, that Buckeye is estopped from denying coverage on the basis of late notice since it initially focused on the "business" exclusion provision of the policy. While it is true that the first interchange of correspondence between the claims representative and Perry's counsel indicates that the question of policy coverage was the primary subject, as heretofore pointed out this was responsive to a specific inquiry in that area by insured's counsel and took place at a time when the representative had not yet even ascertained that Perry was an insured of Buckeye on the date of the accident. This correspondence was patently informal and general in its nature, and represented no definitive posture on the part of Buckeye that should properly be construed as an estoppel or waiver of the valid defense of unreasonable delay of notification.

Defendants have cited two Virginia cases in support of their position on this point, but both are inapposite. In Lumbermen's Mutual Casualty Co. v. Hodge (1964) 205 Va. 36, 135 S.E.2d 187, the insurer did not attempt to interject the question of delayed notice until the *second* trial of an action for liability on the policy instituted by the plaintiff incident to a judgment which had already been obtained against Lumbermen's insured. The Court held, and properly so, that the insurer had waived the defense of notice by its unequivocal course of conduct and litigation solely on the question of policy coverage. In Nationwide Mutual Ins. Co. v. Gentry (1960) 202 Va. 338, 117 S.E.2d 76, the Court merely held that where the insurer had knowledge of the breach of the policy terms and nevertheless continued to defend the case without a reservation of rights, it was estopped to avoid liability on the ground of such breach.

In the present case the insured and other parties were on notice from the very first that Buckeye was denying liability under the policy. The insured was advised that counsel for Buckeye was proceeding under a reservation of all of its rights, and this question of coverage was presented at the pre-trial conference in the state court. This conduct by Buckeye was appropriate and consistent with the position it has taken in this action and in nowise can be construed as either a waiver or estoppel on its part.

The plaintiff's motion for summary judgment will be granted, and counsel may prepare an appropriate order incorporating this opinion by reference therein.