Albert SAGER, Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Corporation, Garnishee of Thomas B. Maloney, Respondent.

No. 55038.

Supreme Court of Missouri, Division No. 2.

Jan. 11, 1971.

Hullverson, Richardson & Hullverson, St. Louis, for appellant.

Sommers & Montrey, Byron A. Roche, John P. Montrey, St. Louis, for respondent.

MORGAN, Judge.

Plaintiff was in an automobile wreck and hired an attorney to prosecute his alleged cause of action against others. Based on the negligent manner in which the attorney handled the cause, plaintiff later obtained a judgment against the attorney for $15,000 with interest plus costs. Nothing was paid on the judgment and plaintiff summoned two insurance companies as garnishees seeking to establish the liability of either or both under certain "Lawyers Professional Liability Policies." Plaintiff failed to prevail and has now appealed.

The chronology of events reveals:

1. While associated with a law firm, the attorney was protected from claims for breach of professional duty by Lloyds of London during the period March 23, 1960, to March 23, 1961. Similar coverage was obtained from defendant, St. Paul Fire & Marine Insurance Company for the period February 20, 1961, to February 20, 1963.

2. Plaintiff suffered personal injuries in a rear-end type collision on November 21, 1956, and employed the attorney to prosecute his alleged claims against two persons named Nelsen and Kelam.

3. The attorney filed suit against both Nelsen and Kelam on December 27, 1956, and both defendants were served and filed answers.

4. The record reflects the cause was "set," continued and "re-set" on at least four occasions.

5. Defendant Nelsen died on January 12, 1959.

6. The attorney filed an amended petition on May 4, 1959.

7. The attorney filed a suggestion of death reference Nelsen and motion for substitution on May 18, 1959, but no order was made and the nine months non-claim statute became effective.

8. On April 19, 1960, the cause appeared on the dismissal docket and was "dismissed without prejudice for failure to prosecute."

9. The cause was not re-instated on the docket nor was a new suit filed prior to November 21, 1961, and the five year statute of limitations barred further prosecution of plaintiff's alleged cause of action.

10. On June 19, 1963, plaintiff brought suit against the attorney for negligence in the handling of his personal injury suit and therein alleged the following specific negligent acts:

    (a) permitting the nine months non-claim statute to become effective as to any claim against Nelsen.

    (b) permitting the dismissal of his suit without prejudice.

    (c) failing to reinstate said cause of action within one year after it was dismissed.

    (d) permitting the five year statute of limitations to run.

    (e) failing to prosecute the case diligently.

11. The trial court entered judgment for plaintiff against the attorney after finding him "negligent in each and every respect outlined in the petition."

After the garnishment proceeding was initiated, a motion for summary judgment by Lloyds of London was sustained and there has been no appeal from that ruling.

■ In approaching our task of considering the issues submitted by the remaining parties, we must start from the obvious premise that plaintiff's personal injury suit was handled negligently by the attorney. Thus, leaving the basic question of wheth-

er or not the "Lawyers Professional Liability Policy" issued by defendant protected the attorney from the resulting liability; and also, whether or not the insured attorney failed to substantially comply with the notice provisions of the policy which might have relieved the insurer from such liability.

As to the first question, the policy provided "Coverage" wherein the insurer agreed: "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of professional services for others in the Insured's capacity as a lawyer and caused by the Insured or any other person for whose acts the Insured is legally liable * * *." There can be no question but that plaintiff's claim for negligence against the attorney arose out of his abortive attempt to provide "professional services." The purpose of the policy was to protect against just such conduct, and the insurer is liable unless there is merit in its contention the insured attorney failed to substantially carry out his obligation reference notice.

As to the second question, the policy provided, under the caption "Conditions," that: "As soon as practicable, notice must be given the Company on Insured's receiving information as to any *occurrence covered by this policy*, with full particulars of any claim arising therefrom. If suit is brought the Insured must immediately forward to the Company every summons or other process received by him * * *." (Emphasis added.) Such compliance was made a condition precedent to liability of insurer.

To sustain the claim of non-compliance, the insurer points up the admission of the attorney that he learned the case had been dismissed during the summer of 1961—at least before September; that the five year statute did not become effective until November 21, 1961; that during the summer of 1961 the case was in a "desperate posture"; that after learning of such dismis-

sal, "Had such notice been given, St. Paul [insurer] could have seen to it that suit against Kelam be refiled prior to the expiration of the five year statute of limitations. Therein lies the prejudice to St. Paul * * *" Inherent within this contention is the argument that the attorney should have notified the insurer after each event heretofore listed, including as far back as failure to obtain an "order of substitution" after the death of Nelsen in 1959. Prior to considering if any of such prior events could reasonably be called an "occurrence covered by this policy" which called for notice to the insurer, we also look to the arguments of plaintiff. Basically, the approach of the plaintiff is not to admit or deny the attorney acted negligently throughout the entire period of time, but to submit that "* * * the negligent act which finally, fully and forever caused Mr. Sager's [plaintiff's] damage was letting the five year statute of limitations run."

Both the attorney and a claims manager of the insurer testified in the garnishment proceeding. The attorney explained that the car of his client [plaintiff] had been hit in the rear by a car driven by Nelsen which had been hit in the rear by that driven by Kelam; that "* * * after the depositions, factually, Mr. Nelsen was not liable for the collision and was a very favorable witness for us, for the plaintiff, and it was actually my intention, if he had been living, I would have dismissed against him." It is of interest that this decision, whether strategically correct or not, was not challenged by the insurer, nor does the record contain any basis whatever for holding that by the attorney so doing, the plaintiff (client) would have had a cause of action based on this "occurrence". Not even in retrospect can the particular decision be called negligent with any degree of confidence. The advantage of having Nelsen as a witness might have far offset the questioned possibility of recovering from him. The attorney further testified that he changed "firms" by January 1, 1960,

and never received the "card" notice it is assumed was mailed to the attorney prior to the dismissal in April of 1960. Further, he said he did not learn of the dismissal before the summer of 1961; that it "had occurred to me that a dismissal for want of prosecution is in the nature of a voluntary non-suit and I recalled that there was a statute that you had a year in which to file your lawsuit"; that while "hung up" on this thought, he realized a year from dismissal had run by April of 1961; that he consulted with different lawyers as to the best solution to the problem; that he never thought of the five year statute running out in November, 1961, until advised by an attorney on February 5, 1962, that it had and nothing could be done. He then attempted to discuss the problem with plaintiff, but was advised he was too ill, however, sometime before June, 1962, he advised the insurer's local agent of the matter.

The insurer's claims manager testified he first learned of a possible claim against the attorney when their agent forwarded a "lien letter" from plaintiff's new attorney on October 5, 1962.

Neither party has cited any case factually comparable nor has our research revealed any.

Nevertheless, we believe there is only one reasonable approach for considering the problem. The policy was sold and purchased for only one purpose, and that was to protect the attorney from any claim a client might have resulting from the manner in which the attorney had provided "professional services." Until such a claim came into being, the insurer would have no particular interest in the attorney's activities, nor would any one (including the insurer) have contemplated that a duty was on the attorney to advise the insurer he was having difficulties representing a client. The legal representation of others is fraught with unlimited possibilities, and for that reason the insurer's position is of particular interest when it is suggested that if it had been advised of the attorney's quandary, it would have advised him to refile his suit prior to November 21, 1961. Such a defense is very suspect when there is nothing in the policy that suggests free legal service is also provided in addition to the liability coverage. It would be doubtful if the insurer would want to establish such an obligation upon itself for the rather nominal fee charged for such a policy. Without belaboring the point, the suggestion itself raises many questions. For example: (1) When an attorney has filed a petition and a motion to dismiss for failure to state a cause of action has been sustained, should he take the precaution of advising the insurer? or (2) When an objection to a question submitted in interrogatories has been sustained, should the attorney take the same precaution? If the answers were declared to be in the affirmative, it would not be facetious to anticipate the next step would require an insured driver of an automobile, after every slight miscue, to stop at the next phone booth and advise his liability carrier he was doing a poor job of driving. Nevertheless, the fundamental weakness of the insurer's argument is that it faults the insured for the very negligence against which he was insured. If the attorney had been alerted to the five year statute, there probably would have been no problem in the first place. Since he was not conscious of the possibility, it is not logical to argue he should have notified the insurer of something of which he was not aware.

We have concluded that the only "occurrence" calling for "notice" occurred when plaintiff's cause of action was in fact barred by the statute of limitations and the insured attorney realized this fact. The insurer's contention that the attorney failed to substantially comply with the notice requirements of the policy is bottomed on his failure to notify insurer during the summer of 1961. Since we have ruled that no "occurrence" upon which plaintiff could have successfully sued the attorney took place at that time, quite obviously the question of the necessity for notice at that time is not relevant.

After the five year statute barred any further prosecution of plaintiff's original suit, there was nothing that either the insured or the insurer could do. In connection with notice thereafter, there is absolutely no showing of any possible prejudice to the insurer. It is of particular interest that the insurer, after notice, failed and apparently refused to take any part in plaintiff's suit against the attorney. This, perhaps, for the reason the insurer continued to advise the attorney he should look to Lloyds of London for protection. Possible prejudice to the insurer is "One of the factors to be considered by the trier of facts in determining if notice of the accident [occurrence] was given and the suit papers were forwarded within the reasonable time * * *." Greer v. Zurich Insurance Company et al., Mo., 441 S.W.2d 15. It is not argued, nor do we find, that the insurer was prejudiced in any manner by any conduct of the attorney after November 21, 1961, when the five year statute became operative, and we have concluded that the attorney substantially complied with his obligations under the policy.

The judgment should have been for plaintiff and that entered for defendant is found to be erroneous.

The judgment is reversed and remanded for entry of judgment in favor of plaintiff consistent with this opinion.

All of the Judges concur.