**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**Carlos W. MILAM et al., Defendants.**

**Civ. A. No. 75–0089–BK.**

United States District Court,
S. D. West Virginia,
Beckley Division.

Sept. 22, 1977.

228

Jack A. Mann, Beckley, W. Va., for plaintiff.

James M. Brown and James M. Henderson, II, Beckley, W. Va., for defendants.

## MEMORANDUM OPINION

DENNIS R. KNAPP, Chief Judge.

State Farm Mutual Automobile Insurance Company (State Farm) instituted this declaratory judgment action seeking a determination by this court that a certain policy of automobile liability insurance issued by State Farm to Carlos Milam does not afford coverage to Andrew Milam for any damages for which he may become liable arising from an accident which occurred on June 17, 1973. State Farm's contention that coverage does not exist is based solely on the fact that it had no notice of the accident until nearly 10 months after the accident occurred, including a three months' period subsequent to a civil action having been instituted against Andrew Milam on behalf of one of the persons injured in the accident. The facts germane to the issues in this action are not, for the most part, in serious dispute.

Carlos Milam, Andrew's father, was the named insured on a policy of automobile liability insurance issued by State Farm, being Policy No. 1137–142–F10–48B, which afforded liability coverage on vehicles owned by him. On June 17, 1973, Andrew, then 19 years of age and a member of his father's household, was driving a 1971 Ford pick-up truck owned by Callus Gordon Jarrell when the vehicle, in which Jarrell and Sharon Wingo were riding as passengers, veered left off the paved portion of West Virginia State Route 3 in Raleigh County, West Virginia, and struck three pedestrians, killing James Ferrell Pettry, age 15, and injuring Billy Ray Akers and Johnny Boggess, ages 16 and 15, respectively.

At the point where the accident occurred, Route 3 runs generally in an east-west direction. Prior to the accident, Andrew was traveling west in the west-bound lane of travel on a straight portion of the 20-foot-wide highway. The three pedestrians were walking in an easterly direction off the paved portion of the road adjacent to the east-bound lane of travel when the truck veered left across and over the east-bound lane, striking the three youths.

Trooper W. W. Walker of the West Virginia State Police was the investigating officer of the tragic occurrence. By all accounts, including that of State Farm, Trooper Walker made a very thorough in-

vestigation of all the ascertainable circumstances surrounding the accident. The following quoted portions of Trooper Walker's written report[1] of his investigation are pertinent:

"OFFICER'S NOTES:

. . . The brakes were operative. Approximately 2½ inch pedal power assist. The steering gear sector, drag link, all tire rod cross link and drag link [were] operative.

. . . [a]ll mechanical parts of [the Jarrell] vehicle . . . [were] found to be in operative condition.

"SCENE NOTES:

No skid or abrasion marks were present on any part of the asphalt portion of Route 3 at the scene.

It was noted the vehicle did not cut sharply, but veered off into the East bound lane before the initial contact with the pedestrians.

There were no braking marks present on the South berm or shoulder portion of the roadway. . . ."

In addition, Trooper Walker obtained the following statement from Andrew Milam:

"I was going toward Sundial on Route 3. All of a sudden the vehicle went to my left, I could not cut it back, I went down over the hill and hit 2 boys. As soon as the vehicle stopped, I heard them yelling for help. I could not find them, so I got back up on the road and stopped a truck and people started stopping and helping.

Q. How many cigarettes did you smoke with Marihuana before the accident?

A. 5 or 6.

Q. How long before the accident did you smoke them?

A. 7 hours.

Q. Do you feel as if you are under the influence now?

A. Yes sir, drowsy and sleepy.

Q. Did you take or smoke anything just prior to the accident?

A. No sir.
/S/ Andrew J. Milam
        /W/ Trooper W. W. Walker"

Trooper Walker arrested Andrew at the scene of the accident, charging him with negligent homicide and driving while under the influence of drugs. Andrew thereafter pleaded guilty to the negligent homicide charge and was sentenced to one year in jail and fined $100.00.[2] See W.Va.Code 17C–5–1.

On January 29, 1974, a civil action was commenced in state court on behalf of Billy Ray Akers against Andrew and Jarrell for damages resulting from the accident. Andrew was served with the summons and complaint on February 1, 1974. Carlos retained the services of Leo Bridi, an attorney practicing in Beckley, West Virginia, to represent his son. On February 10, 1974, Bridi filed an answer on behalf of Andrew to the Akers complaint.

After having been advised by a person referred to at trial as being from an "uninsured motorist" insurance company that Andrew perhaps was covered under the insurance policy State Farm issued to Carlos, Mrs. Milam immediately telephoned State Farm's agent, W. R. Straub, and informed him of the accident. The following day, April 30, 1974, Straub, Andrew and Carlos met at the Milam home and discussed the events up to that time. On May 1, 1974, a representative of the claims department of State Farm interviewed Andrew Milam and obtained his statement regarding the events surrounding the occurrence of the accident. Carlos also gave the claims representative a written statement to the effect that no report of the accident was given State Farm prior to Mrs. Milam's telephoning Straub. In addition, the representative obtained a copy of Trooper Walker's report and inspected the scene of the accident.

On December 4, 1974, the administratrix of the estate of James Ferrell Pettry filed a wrongful death action in state court against Andrew Milam. Again, a timely answer

2. The record is not clear as to the disposition of the charge of driving while under the influence of drugs.

was filed and served by Mr. Bridi on Andrew's behalf.

This declaratory action was commenced on January 17, 1975. In paragraph 12 of the complaint, State Farm states that it has never denied coverage to Andrew Milam but has refused to defend him. On October 14, 1976, State Farm filed a motion for summary judgment. In support of that motion, State Farm offered the affidavit of agent Straub, who merely stated that State Farm first had notice of the January 17, 1973 accident and the Akers civil action on April 30, 1974—a fact that is not in dispute in the instant case. In further support of its motion, State Farm offered the statements of both Andrew and Carlos Milam, taken on May 1, 1974. The contents of the statements had, pursuant to State Farm's request pursuant to Rule 36 Federal Rules of Civil Procedure, been admitted by Andrew and Carlos as true and correct. Affidavits of Carlos and Andrew Milam were filed in opposition to the summary judgment motion. These counter-affidavits were to the effect that the Milams were not aware that the accident should be reported to State Farm inasmuch as no State Farm insured vehicle was involved in the accident; that notice was given State Farm within a reasonable time and that in any event, State Farm suffered no prejudice in receiving notice of the accident when it did.

The motion was denied by memorandum order of November 29, 1976, wherein this Court held that genuine issues as to material facts were in dispute "as to (1) whether plaintiff was prejudiced by the delay in receiving notice of the accident . . .," *Republic Mutual Ins. Co. v. State Farm Mutual Ins. Co.*, 413 F.Supp. 649 (S.D.W.Va. 1976); and "(2) whether such notice was given within a reasonable time, having regard to all of the circumstances in the case. . . ." *Buckeye Union Cas. Co. v. Perry*, 406 F.2d 1270 (4th Cir. 1969). It was upon these issues that the evidence was adduced before the Court in lieu of a jury.[3]

Coulter Bracken, the State Farm claims supervisor in Beckley, West Virginia, was the only witness called on behalf of State Farm. To support State Farm's position that it had in fact been prejudiced in not having learned of the accident until April 30, 1974, Bracken testified that his company had been put to a decided disadvantage by (1) not being able to view the scene to determine just exactly what had occurred; (2) not being able to inspect the Jarrell vehicle for defects; (3) not being able to locate Jarrell even to the date of trial to determine if his automobile was covered by insurance; (4) not being able to settle the claims, and (5) not being able to interview witnesses at a time when their recollections were fresh.

Andrew Milam, Sharon Wingo and Johnny Boggess testified on their own behalf as to events surrounding the accident itself, as hereinbefore set forth. In addition, Andrew testified that he was unaware that he could have been afforded coverage under his father's insurance policy.

Carlos Milam's testimony was that he too was unaware that his State Farm policy would provide Andrew with coverage and that no one even suggested this to him until April 29, 1974.

On cross-examination, State Farm's counsel asked Carlos the following questions and received the following answers:

"Q. Isn't it true, Mr. Milam, that at the time of this accident, just shortly before and after this accident that you didn't consider that your son was an insured under your insurance policy within your own mind?

A. That is true, Yes, sir.

Q. And isn't it true that is the reason this accident wasn't reported any sooner than it was?

A. That is exactly right."[4]

The State Farm policy contained the following provision:

---

3. State Farm concedes, of course, that Andrew was an insured under the policy.

4. This is, of course, the whole point to the defendants' position respecting the "reasonable time" issue.

"1. Notice. In the event of an accident or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, and the names and addresses of injured *persons* and available witnesses, shall be given by or on behalf of the *insured* to the company or any of its authorized agents as soon as practicable. If claim is made or suit is brought against the *insured*, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representative." (Emphasis in original).

The purpose of a notice provision in policies of automobile liability insurance is to give the insurer an opportunity to make a timely and adequate investigation of the circumstances *surrounding the event* which resulted in the claim being made against an insured. *Ragland v. Nationwide Mutual Ins. Co.*, 146 W.Va. 403, 120 S.E.2d 482 (1961); *Republic Mutual Ins. Co. v. State Farm Mutual Ins. Co.*, supra.

In *Republic Mutual* we held, contrary to that in *Travelers Indemnity Co. v. American Cas. Co. of Pa.*, 226 F.Supp. 354 (S.D.W. Va.1964), that under West Virginia law the question of lack of prejudice was material as to issues involving the question of delay in giving notice of an accident or loss so as to relieve the insurer from his obligation under the terms of an automobile liability policy for a particular occurrence.

In *Republic Mutual*, State Farm's insured, Mona Fleshman, had not given the company any notice of an accident involving the insured's automobile being driven by Robert Jones who was not a resident of Fleshman's household but who was covered under the omnibus clause of Fleshman's policy. The evidence was, however, that State Farm knew from other sources of the occurrence of the accident and had even investigated the accident in which the driver of the other vehicle was killed. When Fleshman and Jones were sued, State Farm declined to defend on the basis of lack of notice from its insured. Basing the decision

with regard to the "prejudice" issue on the then recently decided cases of *Higginbotham v. City of Charleston*, W.Va., 204 S.E.2d 1 (1974), and *Willey v. Travelers Indemnity Co.*, W.Va., 193 S.E.2d 555 (1972), we held that under the circumstances State Farm was not, as a matter of law, prejudiced by its insured's failure to give notice, concluding thusly that the mere fact of such failure did not *ipso facto* give rise to a sufficient legal reason for avoiding their duties under the policy.

In *Higginbotham v. City of Charleston*, supra, the plaintiff's wife, after having been injured on the city's property, gave the city timely notice of the occurrence as all persons who might assert a claim against the city were required to do under the terms of the city's charter. In an ensuing civil action, Mr. Higginbotham was joined as a party plaintiff to recover costs of his wife's medical treatment and for loss of consortium. He had not, however, filed a separate notice with the city of his claim against the city. At the trial, the city moved the trial court for a directed verdict as to Mr. Higginbotham on the ground that he had not filed the requisite notice. The Court denied this motion and the jury returned a verdict in favor of the wife in the sum of $20,000 and in favor of Mr. Higginbotham in the sum of $7,500.

After motions to set aside the verdict of the jury were denied by the trial court, an appeal was taken to the Circuit Court of Kanawha County, which reversed the judgment of the Court of Common Pleas as to the verdict in favor of Mr. Higginbotham.

While holding that compliance with the city's notice requirement did impose "a condition precedent to the right of the claimant to sue the city . . . ," 204 S.E.2d at 4, the West Virginia Supreme Court of Appeals reversed the Circuit Court's decision and reinstated the husband's judgment.

In so doing, Chief Justice Caplan stated at 204 S.E.2d at 5:

"In the case under consideration Mrs. Higginbotham, in accordance with the requirements of the pertinent charter provisions, notified the defendant city of her

injury and of her intention to institute an action for the recovery of damages. The city was thereby afforded a full, timely and complete opportunity to investigate all of the circumstances surrounding her injury and to formulate its defense if it desired to defend. *Was the city in any way hampered in its investigation by not having been served with notice of the husband's subsequent claim? Were its rights thereby prejudiced? We think not.*" (Emphasis supplied).

*Willey v. Travelers Indemnity Co.,* supra, involved an action to recover death benefits due under a policy of automobile liability insurance issued to him by Travelers. Plaintiff's wife was injured in an automobile accident on June 9, 1967, and thereafter on August 15, 1967, died as a result of her injuries. The policy provided for death benefits under these circumstances. Mrs. Willey was buried on August 17, 1967, but on September 20, 1967, her body was exhumed for the purpose of an autopsy which was performed by two physicians, one of whom was retained by Travelers for that purpose. Travelers refused to pay the benefits on the grounds that the plaintiff failed to file a written proof of claim as required under the terms of the policy, and that the injuries received in the automobile accident were not the proximate cause of her death. At trial, the jury returned a verdict against Travelers in the sum of $10,000, which represented the sum due, if at all, under the Travelers policy.

On appeal, Travelers contended, inter alia, that the failure of the plaintiff to file a proof of claim precluded recovery under the insurance policy. Acknowledging that the proof of claim has been held in many prior decisions to be a condition precedent to recovery under the policy, the Court stated at 193 S.E.2d at 558:

"The proof of claim requirement is included as a condition of a policy for the benefit of the insurer. *Its purpose is to allow such insurer to acquire information upon which it can form an intelligent estimate of its liabilities and to afford it an adequate opportunity for investigation of the claim.  . . .*"

The Court went on to hold at 193 S.E.2d at pp. 558–559:

". . . In this circumstance and considering the purpose of a proof of claim . . . *how was the defendant in any manner prejudiced? The obvious answer is that it was not.  . . .* By reason of its knowledge of the death and by its conduct in participating in the autopsy it is clear that it had the means of being fully informed as to the cause of death. It had every opportunity to prepare its defense against the claim of the plaintiff. *The insurer, in the circumstances of this case, would be in no better position had it been furnished a written proof of claim by the defendant.*" (Emphasis supplied).

■ In the instant case, State Farm would distinguish *Republic Mutual, Higginbotham* and *Willey* on the basis that in each of those cases the insurer had actual notice of the accident, claim or loss. While this is certainly true, the distinction is actually one without a difference. At best, it is a matter of degree. That is, in those cases just mentioned, the insurer, having actual notice of its potential liability, was held as a matter of law not to have been prejudiced by its failure to have received notice as provided for in the various policies. In the case at bar we feel that whether or not State Farm was prejudiced by the 10 months' delay is a question of fact that the trier of the facts must decide.

■ It must be remembered, too, that in all of these "lack of notice" cases, the insurer, sooner or later, does receive notice of the occurrence. In order then for the insurer to successfully avail itself of the "lack of notice" defense, it must show that it was prejudiced by reason thereof. The test to apply is whether the insurer would be in a better position with regard to the investigation of the circumstances surrounding the event which resulted in the claim being made either against it or its insured had it been furnished notice within a reasonable time of the occurrence which gave rise to such claim. *Willey v. Travelers Indemnity Co.,* supra;   *Higginbotham v. City of*

*Charleston,* supra; *Republic Mutual Ins. Co. v. State Farm Mutual Ins. Co.,* supra.

Thus, the focal point of the test is with regard to how the accident occurred, or, more simply stated, "what happened?" In the instant case, State Farm does not seriously contend that the circumstances surrounding the accident were other than as set forth in Trooper Walker's report. That report, included in which was the statement of Andrew regarding the use of marijuana and how he felt as a result therefrom and a finding of lack of mechanical failure of the vehicle involved, taken together with Andrew's plea of guilty to the negligent homicide charge (i. e., an admission of such negligence), constitute beyond any peradventure as to "what happened."

Furthermore, there was no evidence adduced at the trial which showed or even tended to show that additional salient facts as to the events surrounding the accident could have been uncovered if notice had been received even at the earliest possible moment after the accident. There were no skid marks to observe, thus making a view of the scene of the accident a perfunctory act. Coulter Bracken did testify that representatives from State Farm could not locate Jarrell after it received notice to question him regarding his having insurance on the vehicle and could not inspect that vehicle for defects, even up to the time of trial. We would decline to hazard an opinion as to just how much effort the State Farm representatives put into their search for Jarrell in view of his having been personally served with the summons and complaint in this action. In any event, there was no evidence that the Jarrell vehicle had any mechanical defects at all, let alone any defects which might have caused the vehicle to veer left just prior to its striking the pedestrians. The contention of State Farm regarding its not knowing whether Jarrell had insurance and its not being able to settle the claims early are of no moment in determining the prejudice issue in view of the stated purpose of the notice provision in the policy of insurance.

In view of all of the foregoing, the Court, as trier of the facts in the case, accordingly finds as a fact that State Farm's rights were not prejudiced by the delay in receiving notice of the June 17, 1973 accident.

As quoted, supra, the "notice" provision of the State Farm policy required that written notice of an accident or loss be given "as soon as practicable." The West Virginia courts have interpreted the phrase "as soon as practicable" to mean "within a reasonable time, having regard to all of the circumstances." *Ragland v. Nationwide Mutual Ins. Co.,* 146 W.Va. 403, 120 S.E.2d 482, 491 (1961), and that determination, at least in this case, is a factual one. See, *Buckeye Union Cas. Co. v. Perry,* 406 F.2d 1270 (4th Cir. 1969).

In *Buckeye Union,* that company had issued to the defendant Perry a policy of automobile liability insurance covering Perry's family automobile. John Campbell, while hauling cinder blocks for Perry in a truck belonging to a third person, was involved in a wreck, injuring two passengers riding with Campbell. Perry gave no notice of the accident to Buckeye, since neither he nor his vehicle was involved in the accident. Some nine months later, the passengers sued Perry for damages stemming from the accident. Perry notified his lawyer, but the latter failed to notify Buckeye until approximately 70 days subsequent to Perry's learning of the suit.

The district court, 296 F.Supp. 888 (S.D. W.Va.1968), in granting Buckeye's motion for summary judgment, held that a delay of ten months was unreasonable as a matter of law, notwithstanding Perry's believing that he had no legal involvement incident to the accident. On appeal, Perry contended that his duty to inform Buckeye arose only when he was sued and that the 70-day delay was not unreasonable as a matter of law.

Judge Sobeloff held, 406 F.2d at 1271, that it was not unreasonable as a matter of law for Perry to have failed to give notice of an accident in which he was not involved.

However, it was held that the 70-day delay in giving notice subsequent to being

sued was, as a matter of law, an unreasonable delay on Perry's part, but it was an unreasonable delay as a matter of law only because the delay was unexplained. Said the Court, 406 F.2d at 1272:

> "Where the insured has suggested no justification for a delay of well over two months, notice was clearly not given 'as soon as practicable.' If some explanation had been tendered, an issue of the timeliness of the notice might have been created for a jury; but in this case there was no offer of any excuse or any show of extenuating circumstances."

The explanation or excuse of the Milams for not reporting the accident was that neither had any idea that Carlos Milam's State Farm policy would afford coverage to Andrew while the latter was driving the Jarrell vehicle. We think that as a result of that tendered explanation, the issue of the timeliness of the notice is one of fact. Considering all of the circumstances[5] in this case, we resolve this issue in favor of the defendants. Thus, we find and hold that notice was given "as soon as practicable."

In view of the foregoing, this Court declares, concludes and holds that the policy of insurance issued by State Farm to Carlos Milam does afford coverage to Andrew Milam with respect to the June 17, 1973, accident, in accordance with the applicable limits of liability as stated in the policy.

Accordingly, judgment will be for the defendants.

---

5. See, especially, testimony of Carlos Milam, elicited by State Farm and quoted supra, at p. 230.