GREAT AMERICAN INSURANCE COMPANY v. C. G. TATE CONSTRUCTION
COMPANY

No. 7910SC904

(Filed 6 May 1980)

**1. Insurance § 96.1— notice of accident to insurer—reasonable time—prejudice to insurer**

In deciding whether an insured has complied with a notice provision in an insurance policy requiring notice to the insurer "as soon as practicable," the finder of facts must determine whether notice was given within a reasonable time considering all the facts and circumstances of the particular case, and, if not, whether the insurer has suffered prejudice from the insured's delay in giving notice.

**2. Insurance § 96.1— notice of accident to insurer—prejudice to insurer—factors to be considered**

In determining whether an insurer has been prejudiced by an insured's failure to give timely notice of an accident, the inquiry is whether the delay has frustrated the purpose of the notice provision to afford the insurer an opportunity to conduct an adequate and timely investigation, and among the factors to be considered are the availability of witnesses to the accident, the ability to discover other information regarding the conditions of the locale where the accident occurred, any physical changes in the location of the accident during the period of the delay, the existence of official reports concerning the occurrence, the preparation and preservation of demonstrative and illustrative evidence such as the vehicles involved in the occurrence or photographs and diagrams of the scene, and the ability of experts to reconstruct the scene and the occurrence.

**3. Insurance § 96.1— automobile liability insurance—notice of accident to insurer—delay unjustified—failure to find insurer not prejudiced**

Evidence that plaintiff insurer was not notified of defendant insured's possible involvement in a collision of 6 April 1978 until 3 May 1978 and evidence of the circumstances of the case was sufficient to support the trial court's determination that defendant's delay was unjustified, but the trial court erred in failing to consider whether plaintiff was prejudiced by such delay where there was ample evidence that plaintiff had identified and obtained statements from all witnesses; plaintiff had available to it voluminous photographs of the scene which showed one of the vehicles still burning and the roadway after the accident; the accident report prepared by the investigating officer was accessible and newspaper accounts of the accident were obtainable; and statements obtained by plaintiff from witnesses were substantially the same as statements the witnesses had given the investigating officer shortly after the collision and plaintiff was therefore not prejudiced because it was unable to contact witnesses immediately after the accident when everything was fresh in their minds.

APPEAL by defendant from *Bailey, Judge.* Judgment entered 17 May 1979 in Superior Court, WAKE County. Heard in the Court of Appeals on 25 March 1980.

Great American Insurance Company (Great American) instituted this declaratory judgment action seeking a determination that it was not liable under a comprehensive general liability insurance policy issued by it to C. G. Tate Construction Company (Tate) for any damages for which Tate might be liable arising out of an accident which occurred on 6 April 1978. Great American did not dispute that the policy was in force at that time. Its contention that coverage did not exist was based solely on the fact that it had no notice of the accident until approximately 30 days after the accident occurred.

Answering the complaint, Tate conceded that it had not notified the plaintiff of the accident at the time it happened, but in explanation of its failure to notify, alleged the following:

(b) That at the time and place of the accident . . ., none of the defendant's personnel or equipment was injured or damaged and was not involved in any manner or wise in the direct collision.

(c) That the officers and directors of the defendant received several reports from the job site immediately after the accident which indicated that the defendant was not involved, directly or indirectly, in the cause of the accident . . . .

(d) That until advised by the plaintiff several weeks after the accident, the officers and directors of the defendant were under the firm belief that the defendant was not involved in the accident and had no exposure or liability in connection therewith.

(e) That had the officers and directors of the defendant [had] any information and belief that the defendant had any responsibility in the accident, it would have immediately reported the same to the plaintiff. . . .

Defendant alleged further that all its witnesses to the accident were still available; that various pictures were made of the accident and were still available; and that an accident report

prepared by the highway patrolman who investigated the scene of the occurrence was still available.

Thereafter, the depositions of numerous witnesses were taken, and the following evidence was thereby developed:

On 6 April 1978 defendant was engaged in a construction project in South Carolina to widen U. S. Highway 221. The accident in question occurred at the intersection of 221 and South Carolina State Road 42-243 and involved a collision between a 1963 Chevrolet Impala operated by Norma Rider Pegg of Cowpens, South Carolina, and a 1973 International tractor tanker carrying petroleum, operated by Robert Allen Thomas of Wellford, South Carolina. A number of defendant's employees, including its job foreman A. G. Foster, Jr., were working in the area and witnessed the collision.

Officer Carl C. Cole of the South Carolina State Highway Patrol investigated the accident. He testified that he initially talked with two of defendant's employees who told him that the tractor tanker and the Chevrolet were both travelling north on Highway 221 and that the tanker had overrun the Chevrolet, striking it from the rear. Upon impact, the tanker had become disconnected from the tractor, rolled over the Chevrolet and burst into flames. Another eyewitness who saw the accident from her home near the road subsequently corroborated this account of what had happened.

Approximately 45 minutes to an hour later, Officer Cole interviewed Mrs. Pegg at the hospital. She told him that she had been travelling south and the tanker was headed north. As they approached the accident site, a bulldozer, apparently belonging to defendant, had backed out from the side of the road and into the northbound lane. The tanker swerved into her lane to avoid hitting the bulldozer and collided head-on with her car. Officer Cole obtained the same version of the accident from Mr. Thomas, the driver of the tanker, when he talked to him the next day. In his official report, Officer Cole "took the version of Mrs. Pegg and Mr. Thomas." He said that, after obtaining Mrs. Pegg's statement, he returned to the scene of the accident and confronted defendant's foreman, A. G. Foster, with her version of the collision. Foster denied discussing the matter with Cole.

The president of Tate Construction, C. G. Tate, Sr., testified that he was informed of the fact that the accident had happened, but was told that the company was not involved. He was not aware of the possibility that his company might be involved, he said, until he received a letter from Great American so indicating dated 12 May 1978. His son, C. G. Tate, Jr., vice president of the company, said that it was also his understanding from reports he received that none of the company personnel or equipment was involved in the accident. He testified, "If I had had any information direct or indirect that Tate was involved I would have absolutely reported it to Great American."

The company's general superintendent, William Robertson, testified that he first heard about the accident the day after it happened from the project foreman, Foster, who told him the company was not involved in any way. A few days later, he said he talked to other people who had been present at the time of the collision, "and they assured me that we weren't involved." It was not until 12 May 1978 that he became aware of the possibility of Tate's involvement.

Several Tate employees, including Foster, who were present at the scene and witnessed the accident, testified that Tate was not involved in the collision and that the accident had not been reported to Great American for that reason. Although initial newspaper accounts and television news reports alerted Foster within 24 to 36 hours of the accident "that somebody was contending Tate was involved," he claimed the reports were erroneous and had been corrected by the media the next day.

Great American found out about the possibility of Tate's involvement on 3 May 1978 when counsel for Mr. Thomas telephoned Donald Quick, Great American's claims manager in Columbia, South Carolina, to report that Thomas was contemplating a lawsuit against its insured, Tate. However, Great American was notified of the occurrence of the accident on 11 April 1978 since it also carried the workers' compensation coverage on Thomas. Quick testified that he had received a report concerning the accident from Thomas' employer on that date which, although it did not mention Tate by name, specified the date, time and place of the accident and stated that "he [Thomas] was injured in an

automobile accident (bulldozer pulled out in front of truck and truck turned over)."

Thereafter, on 17 May 1979 Judge Bailey entered a judgment wherein he found facts and drew conclusions in pertinent part as follows:

FINDINGS OF FACT

. . .

22. Under the circumstances of this case, defendant knew, or in the exercise of ordinary and reasonable prudence should have known, that claims might be filed against it as a result of the accident on April 6, 1978.

23. Defendant did not give plaintiff notice of the accident and these potential claims against it "as soon as practicable," as required by the terms and conditions of its policy of insurance with plaintiff. In fact, defendant never gave plaintiff notice of the accident and these potential claims. Plaintiff found out about the accident and the potential claims from its own independent source.

24. Defendant's failure to notify plaintiff of the accident was not justified or excusable under the circumstances in this case.

. . .

27. Plaintiff, because of defendant's failure to give it notice of the accident on April 6, 1978 "as soon as practicable," as required in the terms and conditions of its policy of insurance with defendant, has denied coverage to defendant for any and all claims made against defendant as a result of the accident.

28. Defendant contends that its failure to give plaintiff notice of the accident on April 6, 1978 "as soon as practicable" was justified and excusable since, in its opinion, it was not responsible for the accident.

. . .

CONCLUSIONS OF LAW

. . .

3. Defendant failed to give plaintiff notice of the accident on April 6, 1978 "as soon as practicable," as required by the terms and conditions of its policy of insurance with plaintiff.

. . .

6. Defendant's unjustified and inexcusable failure to give plaintiff notice of the accident on April 6, 1978 "as soon as practicable" constituted a violation of a condition precedent to coverage under plaintiff's policy of insurance, and, as such, releases plaintiff from its obligation under the policy for the accident on April 6, 1978.

From a judgment that Great American "has no responsibility to indemnify or defend defendant against [any] claims or lawsuits" arising out of the accident between the Chevrolet and the tanker, defendant appealed.

*Johnson, Patterson, Dilthey & Clay, by Robert M. Clay and Robert W. Sumner, for the plaintiff appellee.*

*Nye, Mitchell, Jarvis & Bugg, by Charles B. Nye, for the defendant appellant.*

HEDRICK, Judge.

The policy of insurance issued by Great American to Tate, which was concededly in force during the period at issue in this lawsuit, contains the following provision:

4. Insured's duties in the event of occurrence, claim or suit:

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

Notice provisions such as this one, which are common if not universal, seek to protect the insurer's rights by affording it an opportunity to conduct timely and adequate investigations of the circumstances surrounding the occurrence which gave rise to the claim against its insured. *State Farm Mutual Automobile Insurance Co. v. Milam*, 438 F. Supp. 227 (S.D.W.Va. 1977); *accord, Peeler v. United States Casualty Co.*, 197 N.C. 286, 148 S.E. 261 (1929). It has been observed by Professor Appleman that requiring timely notice from the insured so as to provide the insurance companies this opportunity promotes early settlements and prevents fraudulent claims. 8 J. Appleman, *Insurance Law and Practice* § 4731 (1962) (1973 Cum. Supp.; 1979 Supp.). *See also* 68 Harv. L. Rev. 1436 (1955); *Muncie v. Travelers Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474 (1960) (Parker, J., concurring).

Bearing in mind this purpose of the notice requirement, we think it also vital that we keep in mind the general principle of legal analysis that insurance policies should be given a reasonable construction in accordance with their terms and should be interpreted to provide coverage when rationally possible to do so, rather than to defeat it. Ambiguities in language are resolved in favor of the insured, and exceptions to liability are not favored. 7 Strong's N.C. Index 3d, *Insurance* §§ 6.1, 6.2, 6.3 (1977), and cases cited therein.

The resolution of the instant appeal revolves, we think, around the meaning of the phrase in the policy requiring notice "as soon as practicable." Whether the requirement has been met in a given case obviously cannot be determined by setting a precise period of time within which notice must be communicated. To the contrary, the phrase embodies a fluid concept which can only take shape from the facts and circumstances of the particular case. Thus, "as soon as practicable" means as soon as is reasonably possible, considering the situation. Although we have found no North Carolina case which so holds, recent decisions from a number of our sister jurisdictions have interpreted insurance policies requiring notice "as soon as practicable" to mean notice within a reasonable time. *See, e.g., State Farm Mutual Automobile Insurance Co. v. Milam, supra; Falcon Steel Co., Inc. v. Maryland Casualty Co.*, 366 A. 2d 512 (Del. Super. 1976); *Lumbermens Mutual Casualty Co. v. Oliver*, 115 N.H. 141, 335 A. 2d 666 (1975); *Greer v. Zurich Insurance Co.*, 441 S.W. 2d 15 (Mo.

1969). Moreover, we believe such an interpretation is not only inherent in the language of the phrase, but also implicit in the decision of our Supreme Court in *Muncie v. Travelers Insurance Co., supra,* and Justice Parker in his concurring opinion said as much. The insured, of course, bears the burden of proving compliance with the notice provisions. *Id.; accord, Lumbermens Mutual Casualty Co. v. Oliver, supra.*

In the case before us, the question whether notice was given within a reasonable time was answered negatively by Judge Bailey, and he found facts purporting to support that determination. Those facts are supported by some competent evidence of record, even though the evidence would support contrary findings. For the reasons to follow, however, and despite the arguments advanced on appeal, we do not think the inquiry ends with that determination.

First of all, in holding as he did, Judge Bailey stated to counsel prior to entering judgment that he was relying "primarily on the doctrine of the Muncie case." Although *Muncie* appears to be the leading case in this jurisdiction with respect to the interpretation of the phrase "as soon as practicable," in the context of the instant case we are satisfied that the decision is inapposite, or at least, distinguishable. As the subsequent opinion of the Court in *Fleming v. Nationwide Mutual Insurance Co.,* 261 N.C. 303, 134 S.E. 2d 614 (1964), made clear, the holding in *Muncie* was simply and narrowly this: Notice given eight months or at any time after the happening of an accident, *without any explanation of or justification for the delay, as a matter of law* is not given "as soon as practicable." *Accord, Buckeye Union Casualty Co. v. Perry,* 406 F. 2d 1270 (4th Cir. 1969), wherein Judge Sobeloff for the Court held that a 70-day delay was an unreasonable delay as a matter of law *only because the delay was unexplained.*

However, once the insured tenders an explanation for its delay in giving notice, as Tate did in the case at bar, whatever length of time the delay comprises, the issue whether the notice provisions of the policy have been complied with becomes a question of fact to be determined by the finder of the facts. *Id.; see also* 8 J. Appleman, *Insurance Law and Practice, supra; State Farm Mutual Automobile Insurance Co. v. Murnion,* 439 F. 2d 945 (9th Cir. 1971) (three-year delay, where adequate explanation was

offered, held excusable). Justice Parker, concurring in *Muncie*, intimated as much when he observed that, since the facts were not in dispute there as to why notice had not been given, then whether notice had been given "as soon as practicable" was a question of law for the court. *See also First Citizens Bank and Trust Co. v. Northwestern Insurance Co.*, 44 N.C. App. 414, 261 S.E. 2d 242 (1980) (when the facts are in dispute, the question whether notice was given "as soon as practicable" is a jury matter). This distinction also follows naturally from our interpretation of the language of the policy to permit flexibility in determining whether notice was given "as soon as practicable" by reference to the surrounding facts and circumstances.

Intrinsic in this approach is our belief that the determination of reasonable notice as a question of fact depends on the prejudice to the insurer precipitated by the delay, as well as on the length of and reasons for the delay. *See* 13 G. Couch, *Cyclopedia of Insurance Law* 2d, § 49:88 (R. Anderson ed. 1965). "Prejudice to the insurer is a material element in determining whether notice is reasonably given." *Wendell v. Swanberg*, 384 Mich. 468, 478, 185 N.W. 2d 348, 353 (1971). Thus, the mere fact of failure of notice, or of notice given after an unreasonable delay, where such failures are explained, will not *ipso facto* provide the insurer with a sufficient legal reason for avoiding its obligations under the policy. Nor does it matter from what source the insurance company eventually receives notice. *Bibb v. Dairyland Insurance Co.*, 44 Mich. App. 440, 205 N.W. 2d 495 (1973). We think the rationale for requiring the insurer to show prejudice was succinctly capsulized by the Court in *State Farm Mutual Automobile Insurance Co. v. Milam, supra* at 232:

It must be remembered, too, that in all of these "lack of notice" cases, the insurer, sooner or later, does receive notice of the occurrence. In order then for the insurer to successfully avail itself of the "lack of notice" defense, it must show that it was prejudiced by reason thereof. The test to apply is whether the insurer would be in a better position with regard to the investigation of the circumstances surrounding the event which resulted in the claim being made either against it or its insured had it been furnished notice within a reasonable time of the occurrence which gave rise to such claim. [Citations omitted.]

We are persuaded also by reasons of policy to conclude that the insurer must demonstrate in what particulars it was prejudiced by its insured's delay in giving notice before it can escape its duties under the policy. Insurance contracts are not negotiated agreements between parties of equal bargaining strength. They are written by the insurance companies, and thus the notice provision is hardly a matter of choice. Furthermore, where the penalty paid by the insured is a forfeiture of coverage, we believe the insurer must advance good reasons to avoid its undertaking. Since the notice provision is designed to allow the insurer an opportunity to conduct a timely and adequate investigation in order to gather and preserve evidence and to protect its ability to defend the claim, if that opportunity is afforded despite the failure of timely notice, the insurer has suffered no prejudice from the delay and no good reason is evident to permit it to escape liability. As the Pennsylvania Supreme Court observed in the well-reasoned opinion of *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 76, 371 A. 2d 193, 198 (1977):

> Allowing an insurance company, which has collected full premiums for coverage, to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown timely notice would have put the company in a more favorable position, is unduly severe and inequitable.

[1] Specifically, we hold that, in deciding whether an insured has complied with a notice provision in an insurance policy requiring notice to the insurer "as soon as practicable," the finder of the facts must determine: (1) Was notice given within a reasonable time considering all the facts and circumstances of the particular case, and (2) if not, has the insurer suffered prejudice from the insured's delay in giving notice? In so holding, we are confident that our decision accords with the weight of authority wherein the question has arisen and that it represents the better-reasoned judgment. *See, e.g.*, in addition to the cases hereinabove cited, *American Record Pressing Co. v. United States Fidelity & Guaranty Co.*, 466 F. Supp. 1373 (S.D.N.Y. 1979); *ACF Produce, Inc. v. Chubb/Pacific Indemnity Group*, 451 F. Supp. 1095 (E.D. Pa. 1978); *Sager v. St. Paul Fire & Marine Insurance Co.*, 461 S.W. 2d 704 (Mo. 1971); *St. Paul Fire & Marine Insurance Co. v. Petzold*, 418 F. 2d 303 (1st Cir. 1969); *Atlantic Mutual Insurance Co. v. Cooney*, 303 F. 2d 253 (9th Cir. 1962).

[2]  In determining whether the insurer has been prejudiced, the obvious inquiry is whether the delay has frustrated the purpose of the notice provision to afford the insurer an opportunity to conduct an adequate and timely investigation. That is, in what respects is the insurer in a less advantageous position to defend itself or its insured? Among the factors to be considered are the availability of witnesses to the accident; the ability to discover other information regarding the conditions of the locale where the accident occurred; any physical changes in the location of the accident during the period of the delay; the existence of official reports concerning the occurrence; the preparation and preservation of demonstrative and illustrative evidence, such as the vehicles involved in the occurrence, or photographs and diagrams of the scene; the ability of experts to reconstruct the scene and the occurrence; and so on.

[3]  The record before us discloses that the parties sought to and did elicit evidence relevant to the question of whether Great American had been prejudiced by the fact that it was not notified of Tate's possible involvement in the collision of 6 April 1978 until 3 May 1978. Moreover, we are of the opinion that ample evidence was presented from which the court could have found that the company had in no wise been prejudiced by the delay, despite the court's finding that the delay was "unjustified." For example, Donald Quick, the company's claims manager in Columbia, South Carolina, testified that he was "reasonably sure" all witnesses had been identified; that the company had obtained statements from all witnesses; and that the company had available to it "voluminous photographs made of the scene during the fire while the tanker was still burning and of the roadway after the accident." In addition, the accident report prepared by Investigating Officer Cole was accessible, and newspaper accounts of the accident were obtainable. Although Quick contended that the company had suffered prejudice in that "we were unable to contact the witnesses immediately after the accident when everything was fresh in their minds," he admitted that the statements obtained from them by company adjusters were substantially the same as the statements they gave Officer Cole shortly after the collision. Quick's further contention that the company was prejudiced because the skid marks on the highway had been erased by the time of its investigation was rebutted by his concession

that "[t]he best . . . and the most reliable witness concerning the location of the skid marks and how long they were would be [Officer] Cole."

Although the evidence is plenary on the issue of prejudice, it is necessary that we remand this case to the Superior Court for further proceedings since the record shows that the trial judge refused to consider and determine this question on the basis that, in his opinion, the issue of prejudice "does not arise." Moreover, because the question heretofore has not been squarely presented, nor the rule of law clearly enunciated by the courts of this State, we think it only fair that these parties be given an opportunity to present any other available evidence on the issue of prejudice and to argue the matter in light of the standards herein announced.

As we noted earlier, the trial judge has answered the question of whether Tate gave notice to Great American within a reasonable time under all the circumstances of the case. His resolution of this question in favor of the plaintiff is supported by the evidence, and need not be determined again.

For the reasons stated the judgment of the trial court entered 17 May 1979 is reversed, and the cause is remanded for further proceedings in accordance with this Opinion.

Reversed and remanded.

Judges ARNOLD and ERWIN concur.